[Cite as *Resco Holdings, L.C.C. v. AIU Insurance Co.*, 2018-Ohio-2844.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106234**

---

**RESCO HOLDINGS, L.L.C.**

PLAINTIFF

vs.

**AIU INSURANCE CO., ET AL.**

DEFENDANTS-APPELLEES

[Appeal by National Union Fire Insurance Company
of Pittsburgh, Pennsylvania, Appellant]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-07-637166

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** July 19, 2018

## ATTORNEYS FOR APPELLANT

Daniel J. Lynn
Donald C. Brown
Timothy R. Dingilian
Jackson & Campbell, P.C.
One Lafayette Centre, 300 South Tower
1120 20th Street, N.W.
Washington, DC 20036

Stephen W. Funk
Ronald B. Lee
Roetzel & Andress, L.P.A.
One Cleveland Center, 10th Floor
1375 East Ninth Street
Cleveland, Ohio 44114

Arthur M. Kaufman
Kaufman, Drozdowski & Grendell, L.L.C.
29525 Chagrin Blvd.
Pepper Pike, Ohio 44122

Richard C.O. Rezie
Alton L. Stephens
Gallagher Sharp, L.L.C.
1501 Euclid Avenue
Cleveland, Ohio 44115

Kevin M. Young
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

## ATTORNEYS FOR APPELLEES

### For Hartford Accident and Indemnity Company

Michael C. Brink
Kevin M. Young
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Michele L. Backus

1133 Connecticut Avenue
Washington, DC 20036

Edward B. Parks, II
James P. Ruggeri
Shipman & Goodwin, L.L.P.
1875 K. Street, Suite 600
Washington, DC 20006

Arthur M. Kaufman
Kaufman, Drozdowski & Grendell, L.L.C.
29525 Chagrin Blvd., Suite 250
Pepper Pike, Ohio 44122

Keven Drummond Eiber
5903 Grafton Road
Valley City, Ohio 44280

Richard C.O. Rezie
Gallagher Sharp, L.L.C.
1501 Euclid Avenue
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEES (Continued)**

**For AIU Insurance Company**

Daniel J. Lynn
Donald C. Brown
Timothy R. Dingilian
Jackson & Campbell, P.C.
One Lafayette Centre, 300 South Tower
1120 20th Street, N.W.
Washington, DC 20036

Ronald B. Lee
Roetzel & Andress, L.P.A.
222 South Main Street, Suite 400
Akron, Ohio 44308

**For Employers Insurance Company of Wausau**

Eric E. Caugh
Rolf E. Gilbertson
Patricia St. Peter

Zelle Hofmann Voelbel & Mason, L.L.P.
500 Washington Avenue South, Suite 4000
Minneapolis, Minnesota 55415

Thomas S. Mazanec
Terry Williams
Mazanec, Raskin & Rider Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

Kevin M. Young
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES (Continued)**

**For First State Insurance Company**

Edward B. Parks, II
James P. Ruggeri
Shipman & Goodwin, L.L.P.
1875 K. Street, N.W., Suite 600
Washington, DC 20006

Michael C. Brink
Kevin M. Young
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Michele L. Backus
1133 Connecticut Avenue
Washington, DC 20036

Keven Drummond Eiber
5903 Grafton Road
Valley City, Ohio 44280

**For Nationwide Indemnity Company**

Kaisa Adams
Christopher R. Paar

Rolf E. Gilbertson
Patricia St. Peter
Eric E. Caugh
Zelle Hofmann Voelbel & Mason, L.L.P.
500 Washington Avenue South, Suite 4000
Minneapolis, Minnesota 55415

Thomas S. Mazanec
Mazanec, Raskin & Rider Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

**ATTORNEYS FOR APPELLEES (Continued)**

**For St. Paul Surplus Lines Insurance Company**

Arthur M. Kaufman
Kaufman, Drozdowski & Grendell, L.L.C.
29525 Chagrin Blvd., Suite 250
Pepper Pike, Ohio 44122

Kevin M. Young
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Terry Williams
Mazanec, Raskin & Rider Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

Stephen P. Brown
Charles W. Browning
Maryanne B. Foster
Patrick E. Winters
Plunkett & Cooney, P.C.
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan 48304

**For Travelers Casualty & Surety Company**

Henry G. Grendell
Kaufman, Drozdowski & Grendell, L.L.C.

29525 Chagrin Blvd., Suite 250
Pepper Pike, Ohio 44122

Terry Williams
Mazanec, Raskin & Rider Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
**ATTORNEYS FOR APPELLEES (Continued)**

**For Travelers Casualty & Surety Company (Continued)**

Patrick E. Winters
Maryanne B. Foster
Charles W. Browning
Stephen P. Brown
Plunkett & Cooney, P.C.
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan 48304

Arthur M. Kaufman
29525 Chagrin Blvd.
Pepper Pike, Ohio 44122

**For Travelers Indemnity Company**

Arthur M. Kaufman
29525 Chagrin Blvd.
Pepper Pike, Ohio 44122

Kevin M. Young
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Terry Williams
Mazanec, Raskin & Rider Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

Maryanne B. Foster
Charles W. Browning
Stephen P. Brown
Patrick E. Winters

Plunkett & Cooney, P.C.
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan 48304
**ATTORNEYS FOR APPELLEES (Continued)**

**For Twin City Fire Insurance Company**

James P. Ruggeri
Edward B. Parks, II
Shipman & Goodwin, L.L.P.
1875 K. Street, N.W., Suite 600
Washington, DC 20006

Keven Drummond Eiber
5903 Grafton Road
Valley City, Ohio 44280

Michele L. Backus
1133 Connecticut Avenue
Washington, DC 20036

Eric Weiss
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114

Kevin M. Young
Michael C. Brink
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

**For Lexington Insurance Company,
Granite State Insurance Company,
Landmark Insurance Company and
American Home Assurance Company**

Ronald B. Lee
Roetzel & Andress, L.P.A.
222 South Main Street, Suite 400
Akron, Ohio 44308


**ATTORNEYS FOR APPELLEES (Continued)**

**For Lexington Insurance Company,**
**Granite State Insurance Company,**
**Landmark Insurance Company and**
**American Home Assurance Company (Continued)**

Daniel J. Lynn
Donald C. Brown
Timothy R. Dingilian
Jackson & Campbell, P.C.
One Lafayette Centre, 300 South Tower
1120 20th Street, N.W.
Washington, DC 20036

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, National Union Fire Insurance Company of Pittsburgh

("National Union"), appeals a judgment that determined its equitable share of the costs of

defending and indemnifying its insured, Rust Engineering Company ("Rust"), against thousands of asbestos-related bodily injury claims. National Union claims the following four assignments of error:

1. The trial court erred by not applying the pro rata methodology in determining the merits of the equitable contribution claims.

2. The trial court erred in ruling that Hartford was entitled to equitable contribution, even though Hartford did not pay more than its fair share of the liability.

3. The trial court erred in ruling that National Union owed equitable contribution to Wausau and Hartford jointly, instead of determining the amount of damages individually based upon the amount that each insurer paid in excess of its fair share.

4. The trial court erred in awarding an undefined amount of "interest" for past defense and indemnity costs.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Rust was a large construction and engineering firm that designed and built industrial facilities for a variety of clients including steel, tire, and chemical manufacturers, paper producers, and power plants. Asbestos-containing products were used in the construction, repair, and rebuilding of these industrial facilities over the course of several decades. Consequently, over 71,000 claims for asbestos-related bodily injuries were filed against Rust since 1995. The claimants alleged they were exposed to asbestos at various work sites while Rust was conducting operations.

{¶4} Rust obtained primary insurance from several insurance companies, including Hartford Accident and Indemnity Company ("Hartford"), Employers Insurance Company of Wausau ("Wausau"), Travelers Casualty and Surety Company ("Travelers"), Continental

Insurance Company ("Continental"), National Union, and a few other carriers that are now insolvent. With the exception of the Continental policy, which contained unique provisions reducing its exposure, all of the primary policies issued to Rust or its corporate parents contained substantially similar language and were functionally equivalent. Under the policies, the insurers promised to pay all sums Rust is legally obligated to pay as damages because of bodily injury caused by an occurrence during the policy period.

{¶5} Rust filed a complaint for declaratory judgment against Hartford, Wausau, Travelers, Continental, National Union, and certain excess carriers in September 2007, seeking coverage for the thousands of underlying asbestos-related bodily injury claims. The primary insurance carriers filed cross-claims against each other for contribution. By stipulation of the parties, the trial court stayed the cross-claims pending adjudication of Rust's claims against the insurers.

{¶6} In 2010, Rust filed a motion for summary judgment against four of the five insurers, seeking a declaration on the trigger of coverage to be applied in determining coverage under successive insurance policies, the allocation methodology to be used, and that the insurers breached their duty to defend Rust. Rust did not move for summary judgment against National Union because the policies it issued to Rust were subject to certain indemnity agreements that required Rust to repay any money that National Union either pays or "shall become liable to pay" under its insurance policies.

{¶7} The trial court ruled that the Hartford, Travelers, Continental, and Wausau policies provided coverage for the asbestos-related bodily injury claims brought against Rust, and the parties were left to determine the amounts each insurer was required to contribute to the aggregate cost of those claims. Hartford, Wausau, Travelers, and Continental ("the Contribution

Plaintiffs") ultimately entered into a settlement agreement with Rust (the "2012 settlement agreement"). The Contribution Plaintiffs agreed to pay over $35 million to cover Rust's unreimbursed costs that were incurred before January 1, 2012, and to pay a certain percentage of Rust's future costs for asbestos-bodily-injury claims up to a capped limit according to the following percentages:

| | |
|---|---|
| Hartford | 31.41 percent |
| Wausau | 35.98 percent |
| Travelers | 15.98 percent |
| Continental | 6.63 percent |

In exchange for compensation, Rust dismissed any and all claims against Hartford, Wausau, Travelers, and Continental, including bad faith claims.

{¶8} After reaching a settlement with Hartford, Wausau, Travelers, and Continental, Rust dismissed its claims against National Union without prejudice. Nevertheless, Wausau, Hartford, Travelers, and Continental continued to litigate their cross-claims for equitable contribution against National Union, and the parties later filed cross-motions for summary judgment on the issue. The trial court denied the motions and scheduled a bench trial.

{¶9} In the meanwhile, Continental settled its equitable contribution claims against National Union. Travelers also settled many of its claims against National Union, but remained in the case with respect to costs incurred after January 1, 2017. Consequently, only the equitable contribution claims of Hartford and Wausau (collectively "appellees") against National Union and the remaining claims of Travelers were subject to the bench trial. Ultimately, the trial court determined National Union's share of liability for the underlying asbestos claims brought against Rust according to the percentages used in the Contribution Plaintiffs' 2012 settlement agreement.

Specifically, the trial court determined that National Union's share of the liability was equal to that of Travelers because they each provided two years of coverage during a similar period of time in the 1980s. National Union now appeals this determination.

## II. Law and Analysis

{¶10} In this appeal, we are asked to decide whether the trial court properly determined National Union's share of the liability for Rust's underlying bodily injury claims. Thus, we are reviewing the propriety of the trial court judgment against National Union on appellees' equitable contribution claims.

{¶11} Contribution is an insurer's right to recover amounts paid in excess of its fair share of an obligation shared by other insurers. *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 321 N.E.2d 787 (1975), paragraph two of the syllabus, overruled on other grounds, *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 653 N.E.2d 235 (1995). It is an equitable doctrine that "'rests upon the broad principle of justice, that where one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a ratable portion.'" *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries Inc.*, 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53 ¶ 21 (8th Dist.), quoting *Baltimore & Ohio R.R. Co. v. Walker*, 45 Ohio St. 577, 588, 16 N.E. 475 (1988).

{¶12} We apply the doctrine of contribution liberally since it is based on broad principles of equity. *Id*. A trial court's application of equitable principles is discretionary and dependent upon the facts of the case. *KeyBank, N.A. v. MRN L.P.*, 193 Ohio App.3d 42, 2011-Ohio-1934, 952 N.E.2d 532, ¶ 32 (8th Dist.). We therefore will not disturb a trial court's exercise of its equity discretion absent an abuse of discretion. *Id*. at ¶ 44.

**{¶13}** An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. An abuse of discretion may also be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

### A. Standard for Determining Shares of Contribution

**{¶14}** In the first assignment of error, National Union argues the trial court erred when it based its amount of contribution on percentages outlined in the 2012 settlement agreement between Rust and the Contribution Plaintiffs. National Union contends the court should have applied a pro rata, time-on-risk standard for determining its share of the liability instead of the contractual percentages in the 2012 settlement agreement.

**{¶15}** There are two accepted methods for allocating coverage among multiple insurers. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 6. In *Goodyear*, the Ohio Supreme Court was asked to decide whether Ohio law requires the use of the "all-sums" approach (joint and several liability) or the pro rata approach (time-on-risk) when allocating insurance coverage for progressive injuries among multiple insurers. The all-sums approach allows the insured "to seek full coverage for its claims from any single policy, up to that policy's coverage limits, out of the group of policies that has been triggered." *Id*. at ¶ 6. The insured selects one insurer (the "targeted insurer") from which it may obtain a defense and indemnification up to the insurer's policy limits. *Pennsylvania Gen. Ins. Co.* at ¶ 11. The targeted insurer then has the right to seek contribution from the other insurers (the "nontargeted insurers"). *Id*.

**{¶16}** In contrast to the "all-sums" approach, the pro rata approach to allocation requires an insurer to pay "only a portion of a claim based on the duration of the occurrence during its policy period in relation to the entire duration of the occurrence." *Id*. Under this formula, liability is proportionally allocated to each insurer according to the time each was on the risk. *See, e.g., Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 732 (Minn.1997).

**{¶17}** The Ohio Supreme Court adopted the "all-sums" approach rather than the pro rata approach to the allocation of insurance coverage in Ohio. *Goodyear* at ¶ 11. In *Goodyear*, the court reasoned that since the insured expected complete security from each policy it purchased, "the insured is entitled to secure coverage from a single policy of its choice that covers 'all sums' incurred as damages 'during the policy period,' subject to that policy's limits of coverage." *Id*. Consequently, the targeted insurer(s) rather than the insured bears the burden of obtaining contribution from other applicable primary insurance carriers. *Id*. The court explained that the "all-sums" approach "promotes economy for the insured while still permitting insurers to seek contribution from other responsible parties when possible." *Id*.

**{¶18}** A court does not determine the extent of the targeted insurer's right of contribution from another insurer pursuant to any "fixed rule." *Pennsylvania Gen.*, 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53, at ¶ 21, citing *Tiffin v. Shawhan*, 43 Ohio St. 178, 1 N.E. 581 (1885), paragraph one of the syllabus. While the amount of contribution is "usually proportionate," the actual award will depend on the particular facts and equitable considerations of the case. *Id*. Therefore, because Ohio applies the "all sums" approach for allocating insurance coverage, the trial court was not required to apply a strict pro rata, time-on-risk standard for apportioning National Union's share of the coverage liability.

**{¶19}** The trial court based National Union's share of liability on the same share allocated to Travelers in the 2012 settlement agreement. National Union argues the trial court abused its discretion by arbitrarily imposing on it the amount Travelers agreed to pay in the settlement agreement because National Union was not a party to the settlement agreement and therefore did not have an opportunity to negotiate its share. National Union also contends that Travelers agreed to pay more than its fair share in the 2012 settlement agreement in order to obtain a release of Rust's bad faith claims against it. Therefore, National Union asserts, the amount Travelers agreed to pay bears no relationship to any known pro rata methodology and should not have been imposed on National Union.

**{¶20}** National Union further argues that even though Ohio utilizes the "all sums" approach to allocating contribution, the trial court should have determined its share of the liability according to a strict pro rata, time-on-risk standard or methodology. It claims its share of liability should be based solely on the total amount of time its policies provided coverage in relation to the total amount of time provided by all the primary policies.

**{¶21}** Hartford and Wausau assumed a significantly larger period of time on the risk than the other three carriers. Hartford issued 14 policies between 1941 and 1962 for a total of 15 years of coverage, and Wausau issued 7 policies between 1962 and 1972 for a total of nine years coverage. Continental only issued one primary policy to Rust's corporate parent between 1983 and 1986, for a total of three years of coverage. And, as previously stated, the Continental policy contained some unique provisions that limited its exposure. Travelers issued two policies between 1981 and 1983 for a total of two years of coverage. Like Travelers, National Union only issued two policies that provided two years of coverage between 1986 and 1988.

Therefore, National Union argues, the trial court should have determined its share of the liability according to a strict mathematical calculation based on its time on the risk.

{¶22} However, such strict time-on-risk calculations do not take into consideration when the coverage was "triggered" and thus are not the most equitable method for allocating liability for asbestos-related bodily injury claims in all cases. The trial court adopted the "continuous trigger" theory for determining when coverage is "triggered" under the relevant insurance policies in its 2012 ruling on Rust's motion to partial summary judgment. (Order and Opinion Granting Plaintiffs' Motion for Summary Judgment on Issues of Trigger and Scope of Coverage dated Feb. 2, 2012.)

{¶23} According to the "continuous trigger" theory, each and every policy in effect "(1) at the time of initial exposure, (2) during any subsequent period of continuing exposure, or (3) at the time of the physical manifestation of the harm or damage would be forced to respond" to the claim for coverage. Gregory A. Goodman, *Note: Insurance Triggers as Judicial Gatekeepers in Toxic Mold Litigation*, 57 Vand.L.Rev. 241, 267 (2004). Thus, as the trial court found, exposure to asbestos triggers every policy in effect from the date of first exposure until the end of the "coverage block." (Order and Opinion Granting Plaintiffs' Motion for Summary Judgment on Issues of Trigger and Scope of Coverage dated Feb. 2, 2012 at 18-21.)

{¶24} Many of the over 71,000 asbestos claimants alleged no exposure until the 1960s or 1970s. Therefore, these claims did not trigger the earlier policies issued by Hartford and Wausau. A policy is triggered by a claimant's date of first exposure ("DOFE"). Because asbestos claims involve "continuous injury," virtually all the claims trigger the later policies. Consequently, not all policies have the same exposure; the earlier policies are less exposed than later policies. Although Hartford issued the largest number of policies over the longest period of

years, it issued its policies between 1941 and 1962.   Therefore, its exposure to claims relative to its time-on-risk is less than the exposure of later policies that accumulated all the claims that were triggered earlier.

{¶25} The trial court recognized that the parties' settlement agreement considered these factors:

> The Defending Insurers and Rust did not agree to a straight pro rata allocation in the Settlement Agreement.   Rather, the Defending Insurers and Rust agreed to percentages for the Defending Insurers that reflect: the Defending Insurers' policies, the time periods each insurer insured Rust, and the fact that the average DOFE continues to move later in time (commonly called the "march forward" effect) because the population of claimants with first exposure in earlier years is diminishing over time.   Day 1 [4/25/17] Tr. at 64:9-65:23.   To account for these factors, the Defending Insurers and Rust agreed that the Defending Insurers with policies in the earlier years would pay a smaller share and that the Defending Insurers with policies in later years would pay a larger share. * * *   The Court finds that the settlement agreement is more representative of real-world circumstances than a pure pro-rata-by-time-on-risk allocation.

(Aug. 23, 2017 Judgment Entry at ¶ 126.)

{¶26} As previously stated, National Union argues the trial court erred in determining that National Union's fair share is the same as the share Travelers agreed to pay under the 2012 settlement agreement.   National Union also argues the trial court "effectively forced National Union to become a party to a settlement agreement without National Union's consent."   However, National Union has not been made a party to the settlement agreement since it has no rights or liabilities under the agreement, which it can neither breach nor enforce.   Rather, the trial court adopted the reasoning applied by the parties to the settlement agreement in reaching the percentages of contribution owed by each insurer.

{¶27} Indeed, National Union's exposure was comparable to Travelers' exposure.   As previously stated, their policies contained substantially similar language and were functionally

the same. Travelers and National Union were similarly situated because they each issued two years of coverage in the 1980s. The only difference between the policies is that Travelers provided coverage from 1981 to 1983, and National Union provided coverage from 1986 to 1988. And since asbestos-related claims trigger later policies more than earlier policies, the National Union policies had at least equal, if not greater, exposure than the Travelers policies. Therefore, the trial court's decision to equate the Travelers policies with the National Union policies was reasonable under the circumstances.

{¶28} National Union nevertheless argues that Travelers paid more than its fair share in order to obtain certain benefits, including a release of Rust's bad faith claims against it. Thus, National Union disputes the trial court's factual finding that National Union's exposure was substantially similar to Travelers' exposure. However, as previously stated, Travelers and National Union each issued two policies providing coverage for two years during the 1980s. Therefore, their positions are similar, except for the fact that National Union's policies were issued after the Travelers' policies.

{¶29} Furthermore, National Union's claim that Travelers agreed to pay more than its fair share in order to obtain certain benefits is purely speculative. There is no evidence that Travelers paid more than it owed under its policies. And as the trial court observed, the purpose of the settlement agreement was not to change how much any insurer was obligated to pay, "but to streamline the claims-paying process so that the Defending Insurers could pay a fixed amount of total costs rather than calculate the share it would owe on a claim-by-claim basis for each of the more than 70,000 Asbestos suits individually." (Aug. 23, 2017 Judgment Entry at ¶ 50.)

{¶30} Because determining the actual shares of liability on a claim-by-claim basis would be time consuming and expensive, the 2012 settlement agreement was a cost-effective solution

for everyone. Based on the evidence adduced at trial, the trial court found that the 2012 settlement agreement was negotiated in good faith and at arm's-length. And since National Union's position was substantially similar to Travelers, it was reasonable for the trial court to conclude that National Union's share of liability was the same as Travelers.

{¶31} Accordingly, the first assignment of error is overruled.

## B. Joint Claims

{¶32} In the second assignment of error, National Union argues the trial court erred in concluding that Hartford was entitled to equitable contribution even though Hartford failed to prove that it paid more than its fair share. It claims that Hartford's equitable contribution claim against National Union is barred because Hartford only paid 31.41 percent of the liability, and its pro rata time-on-risk share is 49 percent.

{¶33} In the third assignment of error, National Union argues the trial court erred in ruling that it owed equitable contribution to Hartford and Wausau jointly, instead of determining the amount of damages individually based on the amount that each insurer paid in excess of its fair share. National Union further asserts that although Wausau overpaid its share of the liability, National Union should not be responsible for the full amount of Wausau's overpayment because National Union only owes a small percentage under an individualized pro rata calculation.

{¶34} In both the second and third assigned errors, National Union argues the trial court's judgment should be reversed because it failed to determine Hartford and Wausau's shares of liability individually based upon the amount each insurer paid in excess of its fair share. By the same token, National Union asserts the trial court's judgment should be reversed because it

erroneously allowed Hartford and Wausau to seek contribution from National Union jointly, rather than individually.

**{¶35}** The trial court found that Hartford and Wausau, together, paid more than their collective fair share. This conclusion is reasonable since National Union contributed nothing toward its share of the liability and has therefore paid less than its fair share. And since Hartford and Wausau collectively paid more than their fair share, the court concluded they could jointly seek contribution from National Union to pay its fair share.

**{¶36}** Whether two or more insurers may jointly seek contribution from another insurer is not established in case law. Just as there are no cases expressly authorizing joint prosecution of equitable contribution claims, there are no cases prohibiting them. Virtually all cases involving equitable contribution among insurers concern a single insurer that paid a claim and sought contribution from one or more nonpaying insurers. *See, e.g.*, *Pennsylvania Gen.*, 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53.

**{¶37}** Nevertheless, Ohio law allows plaintiffs to pursue claims jointly, and joint awards have been granted. For example, in *Sivit v. Village Green of Beechwood, L.P.*, 2016-Ohio-2940, 65 N.E.3d 163 (8th Dist.), insurers and tenants of an apartment complex damaged in a fire sued a property management company alleging its negligence caused the fire. The ten plaintiffs sought compensatory and punitive damages. After awarding compensatory damages in a bifurcated trial, the jury awarded the plaintiffs a lump sum of $2,000,000 in punitive damages. *Id*. at ¶ 7. Although the award gave rise to complications under the punitive damages statute that are not relevant here, the case illustrates that plaintiffs as a group may seek and obtain damages in a lump sum. Moreover, the court in *Sivit* observed:

The [plaintiffs] do not dispute that the individual plaintiffs could have entered into an agreement specifying how any punitive damages award they received was to be allocated among them, and that, if such an agreement had been made, the trial court could have enforced that agreement and ordered the allocation and distribution of the punitive damages award consistent with that agreement.

*Id.* at ¶ 43.

**{¶38}** The trial court in this case made a similar observation:

The Contribution Insurers are seeking contribution together — that is, they are jointly seeking to compel National Union to pay its fair share. They are not asking the Court to allocate National Union's contribution between them, and the Court sees no reason to intrude unasked into their relations.

(Aug. 23, 2017 Judgment Entry at ¶ 115.) Since there is no law prohibiting the court from allowing multiple insurers from jointly prosecuting a combined equitable contribution claim, we find no error in the court's decision to allow Hartford and Wausau to jointly seek contribution from National Union.

**{¶39}** National Union nevertheless argues the trial court's judgment should be reversed because Hartford failed to prove that it paid more than its fair share and is therefore not entitled to any contribution. However, National Union does not dispute that Hartford and Wausau collectively overpaid their share of the liability. Indeed, National Union suggests that Wausau likely overpaid its share. Yet National Union has not contributed anything toward its share of the liability. Therefore, National Union cannot deny that it has not paid its fair share. And since Hartford and Wausau may prosecute contribution from National Union jointly, their collective share is relevant, and Hartford's individual share is not.

**{¶40}** Moreover, allowing Hartford and Wausau to assert their claim jointly did not prejudice National Union. As previously stated, the trial court reasonably determined the amount of National Union's share of the collective liability according to the amount Travelers

agreed to pay under the 2012 settlement agreement because the two carriers were similarly situated.

{¶41} National Union would like us to remand the case to the trial court for a strict pro rata calculation of each insurer's share of liability. However, as previously stated, equity does not require the strict application of any fixed rule. *Pennsylvania Gen.*, 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53, at ¶ 21, citing *Shawhan*, 43 Ohio St. 178, 1 N.E. 581, paragraph one of the syllabus. Rather, equity gives the court flexibility to reach a just result depending upon the facts and circumstances of each case. *Id.* Furthermore, we will not disturb a trial court's exercise of its equity discretion absent an abuse of discretion. *KeyBank*, 193 Ohio App.3d 42, 2011-Ohio-1934, 952 N.E.2d 532, ¶ 44. We find no abuse of discretion in the trial court's decision to allow Hartford and Wausau to jointly prosecute their equitable contribution claims against National Union.

{¶42} The second and third assignments of error are overruled.

### C. Prejudgment Interest

{¶43} In the fourth assignment of error, National Union argues the trial court erred in awarding an undefined amount of "interest" for past defense and indemnity costs. National Union concedes that if the order to pay interest refers to postjudgment interest, then the order is not reversible because R.C. 1343.03 provides for the accrual of postjudgment interest on a final judgment that has been awarded on any claim. If, however, the order to pay interest refers to prejudgment interest, then the award of interest is reversible error because neither Hartford nor Wausau are entitled to prejudgment interest since the trial court never made a determination as to when any amount of National Union's contribution became due and payable.

{¶44} The trial court's judgment states, in relevant part:

> Accordingly, for past costs incurred in the defense and indemnity of Asbestos Suits through November 2016, National Union is ordered to pay Hartford and Wausau 13.57 percent of $25,957,713.80 or $3,522,461.76 plus interest.

Notably, the trial court's judgment does not mention the word "prejudgment interest"; it simply orders "interest." We also note that neither Hartford nor Wausau filed a motion asking for prejudgment interest.

{¶45} Prejudgment interest is a creature of statute and is only awarded in certain cases. For example, R.C. 2743.18 authorizes an award of prejudgment interest in cases involving state liability. R.C. 1343.03 authorizes an award of prejudgment interest for breach of contract and in tort cases where a defendant fails to negotiate in good faith. Since it is undisputed that National Union was not a party to any contract with either Hartford or Wausau, R.C. 1343.03(A), which authorizes prejudgment interest for breach of contract, is inapplicable. And even if there were contractual liability, the court could not legally award prejudgment interest without determining the date on which the interest was to run, which is based on when National Union's share of the contribution became due and payable. R.C. 1343.03(A); *Gates v. Praul*, 10th Dist. Franklin No. 10AP-784, 2011-Ohio-6230, ¶ 61.

{¶46} An argument could be made that National Union should pay prejudgment interest under R.C. 1343.03(C) because it failed to negotiate a settlement in good faith. It could also be argued that R.C. 1343.03(C), which applies to judgments awarded for damages caused by tortious conduct, is inapplicable because Hartford and Wausau's claims are based in equity rather than tort. But even if Hartford and Wausau could seek prejudgment interest under R.C. 1343.03(C), the trial court would have had to make certain factual findings before it could award prejudgment interest, such as the applicable interest rate and the date on which the prejudgment

interest was to be calculated. Moreover, the court would have had to find that National Union failed to negotiate in good faith. R.C. 1343.03(C)(1).

**{¶47}** As previously stated, the trial court's judgment simply awards a specified amount of damages "plus interest." The judgment entry does not provide any indication that the trial court intended to award prejudgment interest and the court made none of the required findings to sustain an award of prejudgment interest. The judgment entry therefore provides for postjudgment interest rather than prejudgment interest.

**{¶48}** Accordingly, the fourth assignment of error is overruled.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR