NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0032n.06

Case No. 22-3324

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CHEMICAL SOLVENTS, INC.,

    Plaintiff-Appellant,

v.

GREENWICH INSURANCE CO., *et al.*,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

AMENDED OPINION

**Before: MOORE, THAPAR, and LARSEN, Circuit Judges.**

THAPAR, J., delivered the amended opinion of the court in which LARSEN, J., joined. MOORE, J. (pp. 6–11), delivered a separate dissenting opinion.

**THAPAR, Circuit Judge.** A lawsuit left Chemical Solvents liable for a hefty settlement sum. Luckily for Chemical Solvents, its insurance policies covered that sum. But Chemical Solvents claims its insurers later duped it into bearing some of the cost. We disagree and affirm.

I.

Two plaintiffs sued Chemical Solvents for bodily injury due to exposure to chemicals. The suit eventually settled, and Chemical Solvents looked to its insurance policies with Greenwich Insurance Company and Illinois National Insurance Company to fund the settlement.

Because the chemical exposure at issue in the suit occurred over a time period covered by multiple insurance policies, divvying up funding for the settlement proved complicated. Chemical Solvents targeted three policies to fund settlement payments: two Greenwich policies and one

Illinois National policy.[1]  The insurance companies then worked out for themselves the percentage of liability for which each policy was responsible.  Based on that reallocation, Illinois National contributed additional funding from other policies that Chemical Solvents held with Illinois National.

Complicating matters, Illinois National had a reinsurance contract with Alembic, Inc., another insurer.  The contract didn't apply to the targeted Illinois National policy, but it did apply to the policies Illinois National drew on for contribution.  So Illinois National billed Alembic for reimbursement.  But Alembic isn't a typical insurer; it's a group captive insurer, meaning its insureds own and control it.  And Chemical Solvents was one of its owners.  So Chemical Solvents ended up on the hook for a large portion of what Alembic owed to Illinois National.

Unhappy with that result, Chemical Solvents sued all three insurers, claiming they couldn't reallocate funding for the settlement—at least not in a way that would trigger the policies Alembic reinsured.  The district court granted summary judgment to the insurers.  Chemical Solvents appealed.

## II.

We start, as we must, by confirming our jurisdiction over this case.  Chemical Solvents initially sued the insurers in state court.  The insurers, led by Greenwich, removed the case to federal district court, claiming diversity jurisdiction.  In the notice of removal, Greenwich alleged all necessary elements of diversity jurisdiction except Alembic's citizenship.  We remanded for the district court to remedy that defect.  *See Chem. Solvents, Inc. v. Greenwich Ins. Co.*, No. 22-3324, 2022 WL 4951245 (6th Cir. Oct. 4, 2022).

---

[1] The third targeted policy was, more specifically, a policy from American International Specialty Lines Insurance Company, an affiliate of Illinois National.

The parties sought rehearing, and their joint brief provided sufficient evidence to establish Alembic's place of incorporation and principal place of business are in the Cayman Islands. That makes the parties completely diverse. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492–93 (6th Cir. 1999); 28 U.S.C. §§ 1332 (c)(1), 1653. Thus, we grant rehearing, vacate our earlier judgment, hold we have jurisdiction, and continue to the merits.

III.

Because the district court based its judgment on equitable doctrines, the parties dispute whether we should review with fresh eyes or for abuse of discretion. Our court has yet to decide this question. *See, e.g.*, *Clark v. Nissan Motor Mfg. Corp. U.S.A.*, No. 97-5956, 1998 WL 786892 at *2 n.6 (6th Cir. Oct. 26, 1998). But even under the less deferential standard of review, we affirm. So we leave this question for another day.

Because this is a diversity case and only Ohio state-law claims are at issue, Ohio law governs. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). According to Ohio law, when insured conduct extends over a time period covered by multiple policies, the insured is entitled to target a specific policy or policies for coverage. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 841–42 (Ohio 2002). A targeted policy is then responsible for "all sums" incurred as damages, up to the policy's limit. *Id.* at 841. Then, the targeted insurers can seek equitable contribution from other policies implicated in the relevant period. *Id.*; *see also Penn. Gen. Ins. Co. v. Park-Ohio Indus.*, 930 N.E.2d 800, 808 (Ohio 2010) ("[A] claim may be made by the targeted insurer against a nontargeted insurer with applicable insurance policies for contribution."). This framework eliminates the need for the insured to figure out how much of the relevant conduct each policy covers, while still allowing the insurers to obtain contribution from all responsible parties.

Here, the parties followed this "all sums" process. Chemical Solvents initially targeted two Greenwich policies and one Illinois National policy to fund the settlement. And Greenwich and Illinois National similarly complied with this approach by seeking equitable contribution from the other Illinois National policies.

Nevertheless, Chemical Solvents argues that equitable contribution shouldn't be allowed here because it undermines the purpose of "all sums" when it leads to the insured reimbursing a portion of its own settlement. Chemical Solvents makes two arguments to support that claim.

First, Chemical Solvents argues that the insured should never bear any financial burden once the "all sums" doctrine kicks in. It's true that the "all sums" doctrine rests on the idea that insureds can expect their policies to cover the entire amount agreed to in the policy agreement. *Goodyear*, 769 N.E.2d at 841. But that only explains why an insured can target policies up to their limits rather than being forced to calculate relative liability itself. It doesn't justify thwarting the insurers' later contribution attempts. As the Ohio Supreme Court said, the "all sums" doctrine "promotes economy for the insured while still permitting insurers to seek contribution." *Id*. "All sums" shifts the burden of calculating relative liability, but it doesn't absolve the insured of all financial burden.

Second, Chemical Solvents claims that contribution is inequitable and therefore unjustified when it would lead to the insured bearing a portion of the loss. True, "all sums" and contribution are equitable doctrines. But no Ohio caselaw indicates that equity favors the insured's financial interests over equitable contribution.

Chemical Solvents points to caselaw from other states that carves out an exception to the equitable-contribution rule when contribution is sought from the insured itself. *See Aerojet-Gen. Corp. v. Transport Indem. Co.*, 948 P.2d 909 (Cal. 1997); *Zurich Am. Ins. Co. v. Ins. Co. of N.*

*Am.*, No. 4:14-CV-1112 (CDP), 2018 WL 2117662 (E.D. Mo. May 8, 2018); *Weyerhauser Co. v. Fireman's Fund Ins. Co.*, No. 06-CV-1189 (MJP), 2007 WL 4420938 (W.D. Wash. Dec. 17, 2007). But these authorities fail to move the needle. For one thing, we follow Ohio law here, not that of other states, and Chemical Solvents hasn't provided any Ohio law supporting such an exception. *See Allstate*, 249 F.3d at 454. For another, even those jurisdictions only apply their exception to uninsured or self-insured parties. *See, e.g.*, *Aerojet-Gen.*, 948 P.2d at 929–30 ("[Contribution has no] place between an insurer and an uninsured or 'self-insured' party."). Here, the insurers didn't seek contribution from Chemical Solvents.[2] They sought it from Illinois National. No jurisdiction has prohibited contribution whenever an insured will face financial consequences down the line. And given that Ohio hasn't established this exception at all, we have no basis for creating such a sweeping exception out of whole cloth.

\* \* \*

In short, the insurers' conduct in this case fits squarely in Ohio's "all sums" framework. We affirm.

---

[2] Chemical Solvents argues Alembic is its self-insurer. But there is no Ohio law indicating that captive group insurers are self-insurers. Regardless, the insurers didn't seek contribution from Alembic. Alembic was only implicated because of its independent contract with Illinois National, which Chemical Solvents doesn't challenge.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Ohio adopted an all-sums insurance-allocation scheme in 2002. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 841 (Ohio 2002). Under the all-sums approach, the insured can target a particular policy to provide coverage for the entire sum of damages incurred, subject to the policy's limit. 15A Couch on Ins. § 220:27 (3d ed. 2022). A fundamental aspect of all-sums is that, when using the all-sums method, an insured is not responsible for periods of self-insurance or uninsurance. *Compare* 15A Couch on Ins. § 220:28 (3d ed. 2022) *with* 15A Couch on Ins. § 220:31 (3d ed. 2022). Those periods cannot be assessed to the insured party and must be divided among the insurance companies on the risk during the relevant period. Ohio has rejected efforts to overturn that rule in favor of a pro rata approach. *Pennsylvania Gen. Ins. Co. v. Park-Ohio Indus.*, 930 N.E.2d 800, 807 (Ohio 2010). Here, the question is whether Ohio's all-sums rule permits insurers to seek equitable contribution from an insured party for periods of self-insurance.

## I. STANDARD OF REVIEW

We review de novo grants of summary judgment. *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018). "Where there are no disputed, material facts, we determine, *de novo*, whether the district court properly applied the substantive law." *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004). This court has applied this standard of review to decisions involving equitable contribution. *OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co.*, 679 F.3d 456, 458–59 (6th Cir. 2012); *IMG Worldwide, Inc. v. Great Divide Ins. Co.*, 704 F. App'x 562, 565 (6th Cir. 2017). We review de novo decisions to grant a declaratory judgment. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008).

## II. ANALYSIS

The district court characterized the question at issue as "whether an insured has the right to prevent a targeted insurer from seeking equitable contribution from a nontargeted insurer when there is a negative financial impact on the insured." R. 70 (Order Granting Summ. J. at 11) (Page ID #2575). It determined that there was not such a right. In support of its conclusion, it relied heavily on an Ohio Court of Appeals case, *Resco Holdings, L.L.C. v. AIU Ins. Co.*, 112 N.E.3d 503 (Ohio Ct. App. 2018). In *Resco Holdings*, the insured party, Rust Engineering Company, sought a declaratory judgment against five insurance companies with which it had policies, seeking coverage for bodily injury claims. *Id.* at 506. Rust filed for summary judgment against four of those insurance companies but not the fifth, National Union, because Rust was required to indemnify National Union for any costs incurred. *Id.* at 507. The trial court issued the declaratory judgment and let the four other insurance companies determine what amounts they had to contribute to the cost of the claims. *Id.*. These four insurance companies settled with Rust, which dismissed its claims against National Union. *Id.* The insurance companies continued to litigate their crossclaims for equitable contribution against National Union, and ultimately the trial court assigned a particular percentage of the liability to National Union. *Id.* On appeal, the Ohio Court of Appeals held that the trial court had not erred by granting the other insurers' equitable contribution claims against National Union. *Id.*

The district court found "persuasive the fact that the *Resco Holdings* court understood that the plaintiff would ultimately be responsible for any liability assigned to the nontargeted defendant." R. 70 (Order Granting Summ. J. at 12) (Page ID #2576). By the time the litigation reached the Ohio Court of Appeals, however, the insured was no longer a party to the case. R. 65-3 (Ohio Ct. Com. Pleas Order Denying Summ. J. in *Resco Holdings* at 7) (Page ID #2527). The

appellate briefs in *Resco Holdings* did not address the argument that National Union should not be subject to contribution at all; they addressed only the methodology by which the trial court calculated its contribution. Appellant Brief, *Resco Holdings LLC v. AIU Ins. Co.*, 112 N.E.3d 503 (Ohio Ct. App. 2018) (No. 106234). The Ohio courts have not clearly answered the question presented here, and thus we must make an "*Erie* guess" as to how the Ohio Supreme Court would rule. *See, e.g.*, *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013).

The Ohio Supreme Court, when it adopted the all-sums rule, approvingly referenced and cited *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034 (D.C. Cir. 1981). *Goodyear*, 769 N.E.2d at 841. In *Keene*, the D.C. Circuit adopted the all-sums rule and held that the insured party, which had periods of self-insurance or uninsurance in between policies, ought not to be held responsible for a pro rata share of the liability from an asbestos exposure suit because then it would be deprived of insurance coverage it had paid for. *Keene*, 667 F.2d at 1047–48. The *Goodyear* court stated that "[l]ike the insured in *Keene*, we are persuaded that Goodyear expected complete security from each policy that it purchased." *Goodyear*, 769 N.E.2d at 841. The *Goodyear* court also cited a Washington case in which the Washington Supreme Court held that "[o]nce coverage is triggered in one or more policy periods, those policies provide full coverage for all continuing damage, without any allocation between insurer and insured." *Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 951 P.2d 250, 256–57 (Wash. 1998). *See Goodyear*, 769 N.E.2d at 841. The *Goodyear* dissent explicitly raised the issue of uninsured years, noting that "for some periods of time during the continuous pollution, the insured may have acted as self-insured and should therefore bear its portion of the allocation of the total damages." *Id.* at 846. The *Goodyear* court thus was fully aware that adopting the all-sums rule precluded such contribution from the insured.

The insurers argue that they have an unqualified right to contribution. In *Goodyear*, the Ohio Supreme Court recognized the possibility of contribution, stating that "insurers bear the burden of obtaining contribution from other applicable primary insurance policies as they deem necessary." 769 N.E.2d at 841. And in *Park-Ohio*, the court used language that is not explicit as to whether there is an unqualified right of contribution; when citing the *Goodyear* decision, the Ohio Supreme Court noted that *Goodyear* "permit[s] insurers to seek contribution . . . when possible." *Park-Ohio*, 930 N.E.2d at 806, 807. It also, in passing, referred to the "right to contribution" in several places. *Id.* at 805, 807. Neither case establishes an unqualified right to contribution. The insurers' argument would reduce the all-sums rule to a purely administrative rule, permitting insured parties to target specific insurers or policies and then permitting insurers to sue the insured for contribution for a pro rata share of the liability anyway. This is inconsistent with the language of *Goodyear* and the cases upon which the Ohio Supreme Court supported its adoption of the all-sums method. The Washington State and D.C. Circuit cases were primary references of the Ohio Supreme Court in its decision to adopt the all-sums rule, and it is likely that the Ohio Supreme Court would hold similarly. California courts, which also use the all-sums rule, similarly decline to apportion liability among insurers and their insured, including insured parties who bought fronting policies. *See Aerojet-General Corp. v. Transp. Indem. Co.*, 948 P.2d 909 (Cal. 1998). In *Aerojet*, the California Supreme Court held that a company that had purchased "fronting policies," a form of self-insurance, from another company, could not be forced to make an equitable contribution to its own defense when it had other insurance policies available. *Id.* at 930. "Equitable contribution applies *only* between insurers, and *only* in the absence of contract. It therefore has no place between insurer and insured, which have contracted the one with the other. Neither does it have any place between an insurer and an uninsured or 'selfinsured' party." *Id.*

(emphasis in original) (citations omitted). It is a defining feature of the all-sums rule that uninsured or self-insured parties are not held responsible for their pro rata share of the liability in continuous injury cases. 15A Couch on Ins. § 220:28 (3d ed. 2022). For these reasons, it is likely that the Ohio Supreme Court would hold that self-insured or uninsured parties cannot be forced to bear a pro rata share of the liability because they would otherwise be denied the "complete security" they expected and paid for when they purchased insurance. *See Goodyear*, 769 N.E.2d at 841.

The next question is whether Chemical Solvents was a self-insured party that could not be targeted for contribution via its fronting policy with Illinois National. After entering Alembic, the group captive, Chemical Solvents purchased insurance policies from Illinois National that were then immediately reinsured by Alembic. This tactic is called "fronting," which is a form of self-insurance that uses "an insurer to issue . . . an insurance policy[] on behalf of a self-insured organization . . . without the intention of bearing any of the risk. The risk of loss is transferred back to the self-insured . . . with an indemnity or reinsurance agreement." *Corwin v. DaimlerChrysler Ins. Co.*, 819 N.W.2d 68, 72 n.3 (Michigan Ct. App. 2012) (ellipses in original) (quotation omitted); *see also Weyerhauser Co. v. Fireman's Fund Ins. Co.*, No. C06-1189MJP, 2007 WL 4420938, at *2 (W.D. Wash. Dec. 17, 2007). Here, the policies that Chemical Solvents obtained with Illinois National for the years 2007 to 2019 are just such fronting policies. This complex arrangement between Chemical Solvents, Alembic, and Illinois National constitutes a method of self-insurance, under which Chemical Solvents is ultimately responsible for paying most of the costs for claims made against it. Because Chemical Solvents was a self-insured party, it cannot be sued for equitable contribution—including through its fronting policy with Illinois National.

### III. CONCLUSION

I would reverse the district court and grant Chemical Solvents' motion for partial summary judgment on its declaratory judgment claim and breach of contract claim. I would also remand to the district court for consideration of Illinois National's motion for summary judgment on its counterclaim against Greenwich Insurance regarding whether it should have been subject to equitable contribution. I respectfully dissent.