AMERICAN INTERSTATE INSURANCE COMPANY, APPELLEE, *v.*
G & H SERVICE CENTER, INC. ET AL., APPELLANTS.

[Cite as *Am. Interstate Ins. Co. v. G & H Serv. Ctr.,
Inc.,* 112 Ohio St.3d 521, 2007-Ohio-608.]

(No. 2006–0051—Submitted October 17, 2006—Decided February 28, 2007.)

LANZINGER, J.

{¶ 1} This case is a certified conflict that raises the issue of choice of law in an action for subrogation brought by a workers' compensation insurer against an employee and a third-party tortfeasor.

## Case Procedure

{¶ 2} Appellant Claude Britton III was struck and injured in Ohio by a truck owned by appellant G & H Service Center, Inc. ("G & H"). Britton was a Louisiana resident and filed for workers' compensation benefits in Louisiana because he was injured in the course of employment with Ray Reich Trucking ("Ray Reich"), a Louisiana company. Britton was awarded benefits for his injuries in accordance with Louisiana's workers' compensation statutes. Another Louisiana company, appellee American Interstate Insurance Company ("American Interstate"), insured Ray Reich for workers' compensation benefits.

{¶ 3} Britton and his wife filed a personal injury claim in Ohio against G & H for injuries he received in the accident. American Interstate also filed a complaint in Ohio, asserting its right of subrogation pursuant to Louisiana law, to recover for expenses it incurred in paying Britton's workers' compensation

benefits. The two cases were consolidated but were voluntarily dismissed without prejudice.

{¶ 4} American Interstate refiled its complaint in Ohio for subrogation against G & H and Britton. Britton answered, challenging the insurance company's subrogation rights and asserting his own personal injury cross-claim against G & H.

{¶ 5} G & H and Britton filed motions for summary judgment, challenging American Interstate's subrogation claim. The trial court granted both motions, concluding that Louisiana's subrogation statutes were similar to an Ohio subrogation statute, former R.C. 4123.931, that had been declared unconstitutional by this court in *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 748 N.E.2d 1111. American Interstate appealed to the Third District Court of Appeals, which reversed the trial court's holding. The Third District held that Louisiana law rather than Ohio law applied, and because subrogation was lawful in Louisiana, the trial court had erred in granting summary judgment.

{¶ 6} In reaching its decision, the Third District applied Section 185 of the Restatement of the Law 2d, Conflict of Laws (1971) ("Restatement"), which governs choice of law regarding workers' compensation subrogation issues. We found that a conflict existed between the Third District's decision and the decision of the First District in *Beer v. Cincinnati Machines, Inc.*, 159 Ohio App.3d 715, 2005-Ohio-901, 825 N.E.2d 221, which held that the choice of law in a similar workers' compensation subrogation action was determined by which state had a more significant relationship to the lawsuit. In *Beer*, the First District applied the same reasoning found in Sections 145 and 146 of the Restatement, sections dealing with conflict-of-law issues for general tort liability and personal injury torts respectively. We certified a conflict regarding the following question: "Where a conflicts of law issue exists in a workers' compensation subrogation claim, should sections 146 and 145, or section 185 of the Restatement of the Law of Conflicts govern?" *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 108 Ohio St.3d 1470, 2006-Ohio-665, 842 N.E.2d 1050.

## Restatement Section 185 or Sections 145 and 146

{¶ 7} This court adopted the Restatement to govern choice-of-law analysis in *Morgan v. Biro Mfg. Co., Inc.* (1984), 15 Ohio St.3d 339, 341–342, 15 OBR 463, 474 N.E.2d 286. We must now determine whether Sections 145 and 146 or Section 185 of the Restatement applies to determine which state law controls American Interstate's complaint for subrogation.

{¶ 8} The *Morgan* court adopted the Restatement in its entirety. Id. However, because *Morgan* concerned a personal injury tort, we applied only Sections 145 and 146 of the Restatement, which relate exclusively to tort law. See

*Morgan,* 15 Ohio St.3d at 342, 15 OBR 463, 474 N.E.2d 286. Both sections establish a "significant relationship" test to determine which state's law applies to a tort action in a choice-of-law situation. Section 146 of the Restatement relates specifically to personal injury torts and establishes a presumption that the law of the state where an injury occurred determines the rights of the parties. This presumption can be rebutted if another state is found to have a more significant relationship to the occurrence and the parties under the principles stated in Section 6 of the Restatement. Section 145 addresses conflicts in tort actions generally and lists several factors for the court to consider when deciding which state law applies to a case.

{¶ 9} By comparison, Section 185 of the Restatement determines which state's law controls in a third-party tort action after an employee has received workers' compensation. That section provides: "The local law of the state under whose workmen's compensation statute an employee has received an award for an injury determines what interest the person who paid the award has in any recovery for tort or wrongful death that the employee may obtain against a third person on account of the same injury." In such cases, the Restatement has eliminated the need to weigh states' interests in having their laws applied and has determined that when it comes to workers' compensation claims, the laws of the state in which the compensation was paid will always apply.

{¶ 10} We determine that with respect to a claim for subrogation brought by a workers' compensation insurer, Section 185 of the Restatement applies, and the laws of the state in which the workers' compensation benefits were paid are controlling. This holding is consistent with precedent that recognizes that workers' compensation statutes represent "a social bargain in which employers and employees exchange their respective common-law rights and duties for a more certain and uniform set of statutory benefits and obligations." *Holeton,* 92 Ohio St.3d at 119, 748 N.E.2d 1111. Because they are a bargain codified in state law to ensure that both employers and employees receive the benefit of their bargain, the laws of the state in which compensation is paid must apply.

{¶ 11} Britton received his workers' compensation award in Louisiana, pursuant to Louisiana law. Section 185 of the Restatement therefore dictates that Louisiana law applies to the workers' compensation insurer's subrogation claim. Britton is a citizen of Louisiana, and his employer, Ray Reich, is a Louisiana corporation that was insured pursuant to Louisiana law by American Interstate, another Louisiana corporation. To apply Louisiana law in this case is consistent with the underlying goal of ensuring that all parties receive the benefit of their social bargain.

{¶ 12} That Section 185 of the Restatement requires application of Louisiana law to the workers' compensation insurer's subrogation claim does not mean that

Louisiana law applies to all issues in the case, however. Some lower courts have expressed reluctance to apply Section 185 of the Restatement, concerned that "the presence of workers' compensation * * * automatically causes the law from the state where the workers' compensation is granted to be applied as to all issues." *Glatkowski v. Grant Med. Ctr.* (Aug. 9, 1994), 10th Dist. No. 94APE04–466, 1994 WL 454715, * 2. Such concerns are unfounded, for Section 185 limits its choice-of-law mandate to questions involving workers' compensation; it has no impact on choice of law in other issues. For example, in a personal injury action in which workers' compensation has been paid, the significant-relationship test set forth in Sections 145 and 146 of the Restatement still applies to determine which state's law should govern the issue of tort liability.

{¶ 13} Although the Restatement requires that claims for subrogation be decided according to the laws of the state in which compensation was paid, this general rule is potentially limited, as Britton and G & H correctly note, by Section 90 of the Restatement. That section creates an exception allowing a state to refuse to entertain a suit on the ground that the cause of action is contrary to a strong local public policy.

### Public-Policy Exception of Restatement Section 90

{¶ 14} Section 90 of the Restatement states: "No action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." Thus in this case, even though the Restatement is clear that it is Louisiana law that should apply to the subrogation claim, it is still necessary to determine whether allowing American Interstate to assert its subrogation rights under Louisiana law would violate Ohio's public policy.

{¶ 15} The public-policy exception found in Section 90 of the Restatement is narrow and should be applied only in rare circumstances. The comments to Section 90 quote Judge Cardozo, stating that a court should not refuse to entertain a suit, unless to do so would " 'violate some fundamental principle of justice, some prevalent conception of morals, [or] some deep-seated tradition of the commonweal [sic, common weal].' " Restatement of the Law 2d, Conflict of Laws (1971), Section 90, Comment *c*, citing *Loucks v. Std. Oil Co. of New York* (1918), 224 N.Y. 99, 111, 120 N.E. 198. Other courts considering public-policy exceptions such as the one found in Section 90 of the Restatement have consistently applied them narrowly. They have required that the foreign right that a party seeks to enforce must be "contrary to good morals, or natural justice, or prejudicial to the best interests of the citizens of the forum state." *Jeffrey v. Whitworth College* (D.Wash.1955), 128 F.Supp. 219, 222.

{¶ 16} In applying a similar public-policy exception to determine whether application of foreign law, as opposed to entertainment of a foreign cause of action, would run counter to citizens' interests, courts have required that a state's

interest in, and relation to, an issue be significant enough that application of foreign law would threaten that policy. *Cooney v. Osgood Mach., Inc.* (1993), 81 N.Y.2d 66, 78–79, 595 N.Y.S.2d 919, 612 N.E.2d 277. Important considerations in determining a state's interest include the interests of the individual parties as well as that of the state. *Schultz v. Boy Scouts of Am., Inc.* (1985), 65 N.Y.2d 189, 202, 491 N.Y.S.2d 90, 480 N.E.2d 679. Because the public-policy concerns are essentially the same whether the question is one of applying foreign law or bringing a foreign action, these considerations are equally relevant when considering Section 90's public-policy exception.

{¶ 17} Applying Louisiana law and allowing American Interstate to enforce its subrogation rights would not prejudice the interests of any Ohio citizens or undermine the state's public policy. The only parties with a substantive interest in the outcome of the subrogation issue are Britton, Ray Reich, and American Interstate, and all are Louisiana citizens. Although the tortfeasor G & H is an Ohio party, it will be only marginally affected by the ultimate decision regarding American Interstate's subrogation claim because the relevant liability issues will be decided under Sections 145 and 146 of the Restatement. The subrogation action will determine only which party G & H must pay if it is found liable in tort.

{¶ 18} Britton and G & H argue that even without an Ohio party with a substantive interest, enforcement of the Louisiana subrogation statute would be contrary to a strong Ohio public policy disfavoring subrogation claims against workers' compensation awards. To support that contention, they rely on *Holeton*, which held that Ohio's former workers' compensation subrogation statute as written was unconstitutional per se. This reliance is misplaced, for the statute in question was declared unconstitutional because of its potential effect. Under the former statute, subrogation might have been possible regardless of whether double recovery occurred. *Holeton*, 92 Ohio St.3d at 123, 748 N.E.2d 1111. The former statute also impermissibly distinguished between injured employees who tried their personal injury claims and those who instead settled their claims. Id. at 125–126, 748 N.E.2d 1111. We did not declare the idea of subrogation claims against workers' compensation awards to be generally unconstitutional or against public policy. In fact, we stated that "[a]ny decision that would hold the mere concept of a subrogation or reimbursement statute *per se* invalid in the workers' compensation context would constitute a legal anomaly." (Emphasis sic.) Id. at 120, 748 N.E.2d 1111. Although at the time of Britton's accident Ohio's subrogation statute had been declared unconstitutional, the General Assembly has since amended the subrogation statutes, retaining the right of subrogation in favor of a workers' compensation insurer. Sub.S.B. No. 227, 149 Ohio Laws, Part II, 3716, 3733. This legislation demonstrates that Ohio does not disfavor subrogation claims as a matter of public policy.

{¶ 19} There is no need to inquire further into the specific operation of Louisiana's subrogation statutes. Since no Ohio party or citizen has a substantive interest in the outcome of the subrogation claims, Ohio's interest in those issues is minimal. Protection of Ohio's public policy does not require any further analysis of the Louisiana workers' compensation subrogation law.

## Conclusion

{¶ 20} The Restatement is clear: subrogation claims arising from workers' compensation payments are governed by the laws of the state in which compensation was paid. This conclusion is dictated by Section 185 of the Restatement, which governs choice of law in workers' compensation claims. Thus, Section 185 of the Restatement requires that Louisiana law apply to subrogation issues asserted by American Interstate, while Sections 145 and 146 of the Restatement must be used to determine which state's law applies to the remaining tort claims.

{¶ 21} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., GRENDELL, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

DIANE V. GRENDELL, J., of the Eleventh Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

————

Shumaker, Loop & Kendrick, L.L.P., John J. Siciliano, and Mechelle Zarou, for appellee.

Kerrigan, Boller, Goettemoeller, Beigel & Hegemann Co., L.P.A., and Thomas W. Kerrigan II, for appellants Claude and Shon Britton.

Smith, Rolfes & Skavdahl Co., L.P.A., Matthew J. Smith, and James P. Nolan II, for appellant G & H Service Center, Inc.