STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellee,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellant.

[Cite as State Auto. Mut. Ins. Co. v. Progressive Cas. Ins. Co., 180 Ohio App.3d 139, 2008-Ohio-6835.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080284.

Decided Dec. 26, 2008.

Droder & Miller Co., L.P.A., and W. John Sellins, for appellee.

Breidenbach, O'Neal & Bacon and Robert M. O'Neal, for appellant.

CUNNINGHAM, Judge.

{¶ 1} In this appeal, we must determine whether the trial court correctly calculated and apportioned liability for underinsured-motorist benefits between two insurance carriers, appellee State Automobile Mutual Insurance Company ("State Auto") and appellant Progressive Casualty Insurance Company ("Progressive").

I

{¶ 2} In April 2004, Angela Smith and her daughter Michaelia Smith were injured while they were passengers in an automobile driven and owned by Tiffany Sharrett. Sharrett's automobile collided with an automobile operated by Krista Stidham, killing Sharrett. Stidham was at fault.

{¶ 3} At the time of the collision, Stidham, the tortfeasor, had an automobile liability insurance policy with a $300,000 single limit. State Auto had issued to D. Keith and Angela Smith an automobile liability policy with an uninsured/underinsured endorsement that had limits of $50,000 per person and $100,000 per accident. Progressive had issued to Matthew C. Sharrett and Tiffany Sharrett an automobile liability policy that had underinsured-motorist coverage with limits of $100,000 per person and $300,000 for each accident.

{¶ 4} The coverage of the tortfeasor's policy was insufficient to satisfy the damages sustained by the Smiths. Angela still had damages of $84,000, and Michaelia's remaining damages totaled $27,500.

{¶ 5} Although State Auto's endorsement and the Progressive policy covered the Smiths' underinsured claims, the companies disagreed on how to apportion the claims in accordance with the "other insurance" clauses in their policies. Ultimately, State Auto paid its per-person policy limit of $50,000 to Angela, and Progressive then paid her $34,000. Michaelia received her entire underinsured settlement of $27,500 from State Auto. Progressive waived a volunteer defense.

{¶ 6} State Auto filed this action seeking a declaration that both insurers shared the liability for the underinsured claims proportionately according to the policies' limits. State Auto also sought contribution from Progressive for two-thirds of State Auto's payments to the Smiths. Progressive counterclaimed, seeking a declaration that the policies should apply in a sequential manner. Specifically, Progressive contended that the State Auto policy was primary, that its own policy was excess, and that its payment of $34,000 to Angela Smith satisfied its obligation as the excess insurer.

{¶ 7} The parties filed cross-motions for summary judgment and submitted the motions on stipulated facts. The trial court declared that both policies provided excess coverage and that both insurers were liable in proportion to the per-accident limit of insurance provided by their respective policies. The court entered judgment for State Auto in the amount of $51,666.

{¶ 8} Progressive raises two assignments of error in this appeal. First, it maintains that State Auto provided primary underinsured coverage and that, as a result, the trial court erred by declaring Progressive responsible for a pro-rata share. Second, Progressive argues that even if pro-rata liability was appropriate, the trial court erred in calculating its pro-rata share. We review de novo the trial court's entry of summary judgment and its interpretation of the insurance contracts.[1]

## II

{¶ 9} It is undisputed that the State Auto endorsement and the Progressive policy provided underinsured coverage to the Smiths in this case. Moreover, both policies would have provided primary underinsured coverage except for the "other insurance" clauses. An "other insurance" clause can limit liability when other insurance is available to cover the loss.

---

1. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 10} State Auto's "other insurance" clause provided, in critical part, that "[i]f there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this [uninsured/underinsured] endorsement: [a]ny insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis."

{¶ 11} State Auto argues that this clause should have limited its liability to excess coverage because the Smiths did not own the vehicles involved in the collision and because the Progressive policy provided primary coverage. State Auto recognizes, however, that this position creates a Catch–22, because its primary coverage triggered the excess coverage in Progressive's "other insurance" clause under these facts, leaving the Smiths without primary coverage. State Auto advocates that the "other insurance" clauses should have cancelled each other out and that pro-rata liability had to be applied to avert this absurdity.

{¶ 12} Progressive argues that State Auto may have intended to limit its liability with the "other insurance" excess clause, but contends that the "excess" clause employed was ambiguous because it referred to insurance coverage for "vehicles," and because underinsured-motorist coverage applies to persons, not vehicles. According to Progressive, State Auto's excess clause should have been held unenforceable, and State Auto should have been declared the primary underinsurance provider. Progressive alone would have gained from such a reading because the issue was not coverage of the insureds but the order in which the two insurers were to pay.

{¶ 13} As with any contract, we must give the insurance policy a reasonable construction in conformity with the intention of the insured and the insurer as gathered from the plain and ordinary meaning of the words used.[2] We will not create an ambiguity where none exists.[3]

{¶ 14} We determine that State Auto and the Smiths intended that the insurance apply to persons and that the excess clause referred to vehicles, because the underinsured-motorist coverage was found in a motorist provision and the coverage was triggered by an accident involving an automobile.[4] Thus, we conclude that the meaning of State Auto's excess clause was not ambiguous, although its reference to "vehicles" may have lacked precision. Other courts that

2. *Dealers Dairy Prods. Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus; *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

3. *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119–120, 661 N.E.2d 1005.

4. See, generally, R.C. 3937.18, titled "Uninsured and Underinsured Motorist Coverage."

have decided the priority of uninsured/underinsured coverage have enforced identical and similar excess clauses, despite the reference to vehicles.[5]

{¶ 15} Progressive argues next that its excess clause, which did not refer to a vehicle, was clearer and should have been given effect over State Auto's clause, resulting in sequential coverage. Progressive's "other insurance" clause provided, "If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all available coverage limits. **However, any insurance we provide shall be excess over any other uninsured or underinsured motorist coverage, except for bodily injury to you or a relative when occupying a covered vehicle.**" "You" is defined as a named insured.

{¶ 16} There is no doubt that Progressive's excess clause was triggered: the Smiths were not named insureds or relatives under the Progressive policy, and the State Auto policy provided coverage. But the policies were similar in the risk they insured, and the "other insurance" excess clauses in both policies were enforceable and applicable.

{¶ 17} When faced with a similar conflict of "other insurance" clauses, the Ohio Supreme Court in *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.*[6] applied pro-rata liability, declaring that "[w]here two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies."[7] The court rejected an argument that a more specific clause should apply.[8]

---

5. See, e.g., *State Auto Mut. Ins. Co. v. Goodson Newspaper Group, Inc.*, 5th Dist. No. 2002CA00364, 2003-Ohio-4395, 2003 WL 21981983; *Wilson v. Miller*, 5th Dist. No. CA–949, 2003-Ohio-4481, 2003 WL 22007415; *Shirley v. Republic–Franklin Ins. Co.*, 5th Dist. No. 2002CA222, 2003-Ohio-5369, 2003 WL 22300546; *Tedeschi v. Mercer* (Apr. 29, 1996), 7th Dist. No. 649, 1996 WL 227765; *Progressive Cas. Ins. Co. v. Farm Bur. Mut. Ins. Co.* (2000), 27 Kan.App.2d 765, 768, 9 P.3d 565 ("We read the clause to provide excess coverage to either a named insured or an omnibus insured if either is injured in a vehicle not owned by the named insured"). Compare *Lemble v. Belknap* (Sept. 30, 1999), 6th Dist. No. L–98–1417, 1999 WL 769554, and *Bertsch v. Nationwide Mut. Ins. Co.*, 5th Dist. No. 02CA49, 2003-Ohio-1105, 2003 WL 953373 (Because insured owner's vehicle was involved in the accident, excess clause in "other insurance" clause was inapplicable).

6. (1977), 49 Ohio St.2d 213, 3 O.O.3d 330, 361 N.E.2d 1052.

7. Id. at syllabus. Compare *Motorists Mut. Ins. Co. v. Lumbermens Mut. Ins. Co.* (1965), 1 Ohio St.2d 105, 30 O.O.2d 428, 205 N.E.2d 67, syllabus (excess clause versus pro-rata clause); *State Farm Mut. Auto. Ins. Co. v. Home Indemn. Ins. Co.* (1970), 23 Ohio St.2d 45, 52 O.O.2d 170, 261 N.E.2d 128, syllabus (excess clause versus escape clause).

8. *Buckeye Union*, 49 Ohio St.2d at 215–216, 3 O.O.3d 330, 361 N.E.2d 1052.

{¶ 18} While *Buckeye Union* dealt with liability insurance, appellate courts have applied *Buckeye Union*'s rule to disputes involving uninsured/underinsured coverage.[9]

{¶ 19} In accordance with *Buckeye Union,* we determine that pro-rata liability applied in this case.[10]  Thus, we decline Progressive's invitation to favor its "other insurance" clause over State Auto's.  Accordingly, we overrule the first assignment of error.

## III

{¶ 20} Progressive challenges the trial court's calculation of its pro-rata liability in the second assignment of error.  Two issues surface in our analysis: (1) which policy limits—the per accident or the per person—defined the ratio and (2) what amount of liability was to be apportioned.

{¶ 21} The court in *Buckeye Union* did not directly address which limits govern because the policies reviewed in that case contained single limits.[11]  In this case, the trial court used the combined maximum *per-accident* policy limits to determine the pro-rata ratio.

{¶ 22} Both parties advocate that the policies' combined *per-person* limits of underinsured insurance applied in this case.  Thus, $150,000 was the "amount of insurance" applicable for determining the pro-rata share.  A pro-rata ratio based upon the per-person policy limits would impose one-third of the liability on State Auto and two-thirds on Progressive.

{¶ 23} We do not need to decide between the limits because State Auto sought contribution for only two-thirds of the liability and not three-fourths.  Thus, we hold that the trial court erred by ordering Progressive to contribute more than its two-thirds share.

{¶ 24} Although the parties agree on the proration formula, they disagree on the amount of liability to be prorated.  Progressive argues that this amount included its payment to Angela Smith as well as State Auto's payments to the Smiths.  State Auto contends that Progressive's payment should be excluded.  But State Auto does not present a cogent argument to support this position.  And State Auto's position conflicts with the pro-rata language in both policies and ignores Progressive's counterclaim.

---

**9.**  *Pierson v. Wheeland,* 9th Dist. No. 22736, 2006-Ohio-1316, 2006 WL 709041, ¶ 19; *Goodson Newspaper Group,* supra; *Wilson,* 2003-Ohio-4481, 2003 WL 22007415; *Tedeschi,* 1996 WL 227765.

**10.**  See *Buckeye Union,* 49 Ohio St.2d at 215, 3 O.O.3d 330, 361 N.E.2d 1052.

**11.**  Id. at 213, 3 O.O.3d 330, 361 N.E.2d 1052.

{¶ 25} We agree with Progressive: to determine the amount of liability to be prorated in this case, we must combine the insurers' payments to settle the Smith's underinsured claims.

{¶ 26} The underinsured payments were $84,000 to Angela and $27,500 to Michaelia. State Auto's pro-rata share is $28,000 and $9,166.67, respectively, for a combined total of $37,166.67. Because State Auto paid $77,500, it overpaid by $40,333.33 and is owed this amount from Progressive.

{¶ 27} Accordingly, we sustain the second assignment of error on this basis and reduce the judgment against Progressive to $40,333.33. We otherwise affirm the trial court's declaration that pro-rata liability applied.

Judgment accordingly.

SUNDERMANN, P.J., and DINKELACKER, J., concur.