[Cite as *Griffith v. MacAllister Rental, L.L.C.*, 2021-Ohio-1800.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| GLENN GRIFFITH, | : | APPEAL NO. C-200311 |
|  |  | TRIAL NO. A-1801925 |
| and | : |  |
| LEONA GRIFFITH, | : | *O P I N I O N.* |
| Plaintiffs, | : |  |
| vs. | : |  |
| MACALLISTER RENTAL, LLC, | : |  |
| Defendant-Third Party Plaintiff-Appellant, | : |  |
|  | : |  |
| and | : |  |
| JOHN DOE COMPANIES #1-5, | : |  |
| JOHN DOE EMPLOYEE, | : |  |
| and | : |  |
| BUREAU OF WORKERS' COMPENSATION, | : |  |
| Defendants, | : |  |
| vs. | : |  |
| ARCHITECTURAL GLASS & METAL CO., INC., | : |  |
|  | : |  |
| Third Party Defendant-Appellee. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 26, 2021

*McCaslin, Imbus & McCaslin, Thomas J. Gruber* and *Michael P. Cussen*, for Defendant-Third Party Plaintiff-Appellant,

*Green & Green, Lawyers, Jared A. Wagner* and *Jane M. Lynch*, for Third Party-Defendant-Appellee.

**BERGERON, Judge.**

{¶1} A construction worker suffered an injury after a boom lift allegedly malfunctioned and ejected him from the lift platform. In addition to receiving workers' compensation benefits, the employee sued the rental company that provided the lift for negligent maintenance and related claims. In turn, the rental company sued the contractor that rented the lift from it, seeking to enforce an indemnity provision contained in the parties' rental agreement. The trial court granted summary judgment in the contractor's favor, reasoning that the indemnity agreement could not overcome Ohio's workers' compensation immunity with respect to claims arising from employment. After reviewing the law and the record, we agree with the trial court's decision and affirm its judgment.

I.

{¶2} The facts of this case are uncontroverted. Third-party defendant-appellee Architectural Glass served as a subcontractor on a large construction project in Cincinnati. To assist in completing the work, Architectural Glass rented a boom lift from third-party plaintiff-appellant MacAllister Rental. Both companies are located in Indiana, but MacAllister Rental agreed to deliver the lift to the job site in Ohio. As part of the rental agreement, Architectural Glass promised to indemnify MacAllister Rental from any liability arising out of the use of the lift, and to insure it from "loss or damage." MacAllister Rental delivered the lift and Architectural Glass began using it, apparently without incident. However, Architectural Glass subsequently loaned the lift to another subcontractor on the project, and that subcontractor's employee, Glenn Griffith, was injured after faulty settings allegedly caused the lift to buck him off.

3

{¶3}   Mr. Griffith received workers' compensation benefits from the general contractor that managed the entire project.  Unlike typical workers' compensation claims, Mr. Griffith filed his claim with the general contractor because it received permission, pursuant to R.C. 4123.35, to self-insure for that project.  And as subcontractors on that project, both Architectural Glass and Mr. Griffith's employer were enrolled in that self-insured program, under the general contractor's umbrella.

{¶4}   Because the injury arose out of his employment, Mr. Griffith was precluded from pursuing any legal claim against the general contractor, Architectural Glass, or his employer.  Ohio law generally provides liability protections to employers that are compliant with workers' compensation regulations, rendering them immune from suit.  And on a self-insured construction project, such as this one, that immunity extends beyond the employer to all enrolled contractors.

{¶5}   But MacAllister Rental was not an enrolled contractor on this project— its only connection was supplying the lift to Architectural Glass.  Mr. Griffith sued MacAllister Rental, alleging negligent maintenance and related claims.  MacAllister Rental in turn filed a third-party complaint against Architectural Glass, seeking indemnification and contribution pursuant to their rental agreement.  MacAllister Rental also alleged that Architectural Glass breached their agreement by failing to insure the lift.  For its part, Architectural Glass did not dispute the existence of the indemnity agreement, instead arguing that the provision in question did not apply because workers' compensation immunity extends to third-party claims.  As to the failure-to-insure claim, Architectural Glass maintained that it should also be dismissed because no "loss or damage" occurred to the lift.

{¶6}    The trial court agreed and granted summary judgment in Architectural Glass's favor, which we review de novo.  *Neyer, LLC v. Westfield Ins. Co.*, 2020-Ohio-5417, 163 N.E.3d 106, ¶ 13 (1st Dist.) ("We review summary-judgment decisions de novo.").  MacAllister Rental now appeals, presenting two assignments of error that challenge the trial court's dismissal of its claims and its decision to apply Ohio law.

II.

{¶7}    We first address MacAllister Rental's second assignment of error because it entails a threshold issue—whether Ohio law applies to this case.  As the forum court, we apply Ohio choice-of-law rules to this determination.  *Estate of Sample through Cornish v. Xenos Christian Fellowship, Inc.*, 2019-Ohio-5439, 139 N.E.3d 978, ¶ 17 (10th Dist.) ("In resolving a conflict of law, the forum court applies the choice-of-law rules of its own state.").  And we afford no deference to the trial court's choice of law.  *See Woodside Mgt. Co. v. Bruex*, 2020-Ohio-4039, 157 N.E.3d 295, ¶ 18 (9th Dist.) ("[A]ppellate courts apply a de novo standard of review to a trial court's choice-of-law determination.").

{¶8}    Ohio has adopted the Restatement of the Law 2d, Conflict of Laws (1971), "in its entirety," for resolving choice-of-law conflicts.  *American Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 112 Ohio St.3d 521, 2007-Ohio-608, 861 N.E.2d 524, ¶ 7-8.  And the "general principle" underlying the Restatement's approach is that the law of the state having the "most significant relationship" to the case should apply.  1 Restatement of the Law 2d, Conflict of Laws, Section 6, comment c (1971); *see Estate of Sample* at ¶ 17 ("The Restatement employs the significant-relationship test, which seeks to identify and apply the law of the state that has the most

5

significant relationship with the parties and dispute."). However, the more precise "choice-of-law rules depend on the 'classification of a given factual situation under the appropriate legal categories and specific rules of law.' " *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 476, 747 N.E.2d 206 (2001), quoting Restatement, Section 7, Comment b. For example, "different choice-of-law rules apply depending on whether the cause of action sounds in contract or in tort." *Id.* Here, both parties agree that this case sounds in contract.

{¶9} MacAllister Rental, as the drafter of the rental contract, could have included an Indiana choice-of-law provision, but it neglected to do so. And "in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has 'the most significant relationship to the transaction and the parties.' " *Ohayon* at 477, quoting Restatement, Section 188(1). To assist with that determination, the Restatement delineates the following factors:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place

of business of the parties.

Restatement, Section 188(2); *see Ohayon* at 477.

{¶10} Here, the place of contracting and place of negotiation occurred in Indiana, and both companies are incorporated in Indiana. Thus, the first, second, and fifth factors weigh in favor of applying Indiana law. However, we conclude that

these considerations are substantially outweighed by the third and fourth factors—the place of performance and location of the subject matter. As already noted, MacAllister Rental delivered the lift to Ohio, knowing that it would be used on a construction project in Ohio.

{¶11} In affording the third and fourth factors more weight, we find the Restatement comments instructive. As to the place of performance, comment e of Section 188 explains: "When both parties are to perform in the state, this state will have so close a relationship to the transaction and the parties that it will often be the state of the applicable law even with respect to issues that do not relate strictly to performance." As to the location of the subject matter, the comments further explicate that when a contract pertains to a specific item or risk (as in the matter at hand), the law of the state containing the item or risk should apply. This is because "it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the thing or risk was located would be applied to determine many of the issues arising under the contract." Restatement, Section 188, comment e.

{¶12} Reinforcing these points, the Ohio Supreme Court emphasizes the centrality of workers' compensation as a preeminent state interest. *See American Interstate*, 112 Ohio St.3d 521, 2007-Ohio-608, 861 N.E.2d 524. In *American Interstate*, the court evaluated whether tort choice-of-law principles should dictate which state's law applies to a workers' compensation subrogation claim (a tort action). Under tort choice-of-law principles, a presumption arises that the law of the state where the injury occurred controls. *Id.* at ¶ 8. Although the employee suffered injury in Ohio, the court nonetheless held that Louisiana law applied because "the

laws of the state in which the workers' compensation benefits were paid are controlling." *Id.* at ¶ 10 (adopting Restatement, Section 185).

{¶13} Driving *American Interstate's* reasoning was the court's conclusion that workers' compensation statutes represent a "social bargain." *Id.* And "[b]ecause they are a bargain codified in state law to ensure that both employers and employees receive the benefit of their bargain, the laws of the state in which compensation is paid must apply." *Id.* Although *American Interstate* is not dispositive because it considered workers' compensation in the subrogation context (a tort claim) rather than indemnity (a contract claim), we find its reasoning instructive in weighing the factors here, particularly when we overlay the Restatement comments quoted above. *See, e.g., Mitchell v. Michael Weinig, Inc.*, S.D.Ohio No. 2:17-CV-905, 2018 WL 4051826, *6 (Aug. 24, 2018) (refusing to enforce an indemnity agreement, despite a valid choice-of-law provision, because "enforcing the indemnity agreement would be contrary to Ohio's fundamental policy of employer immunity under Ohio's workers' compensation statutes and [because] Ohio has a materially greater interest than North Carolina in the determination of the [third party's] claims").

{¶14} In light of the Restatement factors and Ohio's strong interest in implementing its workers' compensation scheme, we conclude that Ohio has the most significant interest in this case. Both parties fully appreciated that the contract would be performed in Ohio because Architectural Glass requested—and MacAllister Rental agreed—to deliver the lift to Cincinnati. Furthermore, the location of the lift, and the risks that MacAllister Rental sought to eliminate through its indemnity provision, weigh heavily in favor of applying Ohio law. MacAllister Rental should have expected that Ohio law could override the indemnity clause. And any interest

8

that Indiana might have in enforcing such an agreement must yield to Ohio's well-established interest in implementing its workers' compensation scheme. We therefore conclude that the trial court properly applied Ohio law and overrule MacAllister Rental's second assignment of error.

III.

{¶15} Having determined that Ohio law applies, we now turn to the merits of this case and MacAllister Rental's first assignment of error. As noted above, the trial court reasoned that Architectural Glass enjoyed immunity from the indemnity and contribution claims because the underlying injury fell within the ambit of workers' compensation. Regarding the failure-to-insure claim, the court dismissed it on the merits because MacAllister Rental did not substantiate any damage to the lift. On appeal, MacAllister Rental musters no argument in its brief for why the trial court wrongly decided the failure-to-insure claim, obviating our need to ponder that point. Instead, it focuses its attention on the indemnity and contribution claims, effectively faulting the trial court for viewing this case through a workers' compensation lens instead of as an independent contract dispute.

{¶16} "Ohio's Constitution and workers' compensation regime shield employers who contribute to the state workers' compensation fund from statutory or common-law liability for injuries sustained by employees in the course of employment." *Goodyear Tire & Rubber Co. v. G4S Secure Solutions (USA), Inc.*, N.D.Ohio No. 5:11CV01170, 2013 WL 256938, *3 (Jan. 23, 2013). *See Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, ¶ 11 ("In return for [workers' compensation] payments, an employer, in most cases, receives immunity from claims for common-law and statutory damages made by its

9

employees * * * ."); *Blankenship v. Cincinnati Milacron Chem., Inc.*, 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982) ("The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act.").

{¶17} Ohio's Constitution provides:

[Workers'] compensation *shall be in lieu of all other rights to compensation, or damages*, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.

(Emphasis added.) Article II, Section 35, Ohio Constitution.

{¶18} Furthermore, "self-insuring employers receive the same protections against employee claims as those paying into the state fund." *Stolz* at ¶ 12, citing R.C. 4123.74 (providing that self-insured employers "shall not be liable to respond in damages at common law or by statute for any injury."). Although MacAllister Rental concedes that Architectural Glass was a self-insured employer, it nonetheless contends that Architectural Glass waived its immunity through the vehicle of the indemnity provision. In MacAllister Rental's view, because it never enrolled in the self-insurance program, no impediment stands in the way of its contractual claim against Architectural Glass. While that premise carries some intuitive appeal, it nevertheless runs headlong into Ohio Supreme Court precedent.

{¶19} In *Kendall v. U.S. Dismantling Co.*, 20 Ohio St.3d 61, 485 N.E.2d 1047 (1985), an employee of a dismantling company was injured while disassembling

pipelines at a sulfuric acid plant. *Id.* at 61. The employee sued the plant owner, which then sought indemnification from the employer based upon the terms of their contract. *Id.* That indemnification agreement provided that the contractor "shall be liable for and protect, defend, indemnify and save [the plant owner], * * * against any and all claims, losses, demands, causes of action, and any and all related costs and expenses, of every kind and character." *Id.* at 63.

{¶20} Despite this broad language, the court in *Kendall* held that the indemnity provision could not overcome the employer's workers' compensation immunity. *Id.* at 65. As the court explained, the "statutory and constitutional immunity granted to complying employers is crucial to workers' compensation law." *Id.* And for that reason, generalized indemnity agreements are not enforceable for claims arising out of employment unless the waiver is "express" and "refer[s] specifically to this particular immunity." *Id.* And to remove any doubt, the court underscored: "Although express indemnity agreements worded in general terms may suffice for other purposes, we are not inclined to construe them as effective waivers of [workers' compensation] immunity absent a clear evocation of the parties' intent to that effect." *Id.* Finally, the *Kendall* court also extended these principles to third parties: "A general agreement of indemnity with a third party which does not specifically express the employer's intent to waive this particular immunity is ineffective for that purpose." *Id.* at paragraph two of the syllabus.

{¶21} Under *Kendall*, we conclude that the indemnification provision in this case falls well short of waiving Architectural Glass's worker's compensation immunity. It provided that Architectural Glass would "indemnify MacAllister Rental from and against any and all loss, damage, expense, claim and/or penalty * * *

11

occasioned by the operation, handling or transportation of * * * the equipment." The indemnity provision does not mention workers' compensation, let alone purport to expressly waive that immunity (another point that MacAllister Rental could have addressed in drafting the form contract). Thus, under *Kendall*, we can only conclude that this provision does not specifically express Architectural Glass's intent to waive workers' compensation immunity. *See Kendall* at paragraph two of the syllabus.

{¶22} Perhaps anticipating this conclusion, MacAllister Rental responds that *Kendall* doesn't apply because Mr. Griffith was not an Architectural Glass employee. We acknowledge that the employer in *Kendall* was seeking immunity from an indemnity claim that arose from an injury to its own employee. *See Kendall*, 20 Ohio St.3d at 61, 485 N.E.2d 1047. By contrast, Mr. Griffith worked for another subcontractor that borrowed the lift from Architectural Glass. Nonetheless, the Ohio Supreme Court recently clarified that workers' compensation immunity also extends to claims by other contractors' employees on a self-insured project: "The unambiguous language of R.C. 4123.35 and 4123.74 compels our conclusion that subcontractors enrolled in a self-insured-construction-project plan are immune from tort claims made by the employees of other enrolled subcontractors who are injured or killed while working on [a] self-insured construction project * * * ." *Stolz*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, at ¶ 2. As *Stolz* explained, the statutory scheme creates "a legal fiction that a self-insuring employer for a self-insured construction project is the single employer, for workers' compensation purposes, of all employees working for enrolled subcontractors on that project." *Id.* at ¶ 27. Thus, under this "single employer" perspective, it makes no difference that Mr. Griffith was not Architectural Glass's employee—Architectural Glass is still

12

immune from all claims arising from that employment because it was enrolled as a subcontractor on this project.

{¶23} In sum, we conclude that the principles in *Kendall* and *Stolz*, working in tandem, preclude MacAllister Rental's third-party claim again Architectural Glass. Under *Kendall*, the indemnity provision was too generalized to effectively waive Architectural Glass's immunity. And under *Stolz*, the *Kendall* principle extends to claims originating from another subcontractor's employee, in the context of a self-insured project. Notably, against this backdrop, MacAllister Rental points to no authority suggesting a contrary result. Following the Supreme Court's guidance in *Kendall* and *Stolz*, we therefore overrule MacAllister Rental's first assignment of error.

\*     \*     \*

{¶24} In light of the foregoing analysis, we overrule both of MacAllister Rental's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion