[Cite as *Great Am. Ins. Co. of N.Y. v. Philadelphia Indemn. Ins. Co.*, 2022-Ohio-1160.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | : | APPEAL NO. C-200353<br>TRIAL NO. A-1804599 | |
|  | : | | |
| Plaintiff-Appellee, | | *O P I N I O N.* | |
|  | : | | |
| vs. | | | |
|  | : | | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | | | |
|  | : | | |
| Defendant-Appellant. | : | | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Final Judgment Entered

Date of Judgment Entry on Appeal: April 6, 2022

*Frost Brown Todd, LLC,* and *David W. Walulik*, for Plaintiff-Appellee,

*Collins Roche Utley & Garner* and *Richard M. Garner*, for Defendant-Appellant.

CROUSE, Judge.

{¶1} Defendant-appellant Philadelphia Indemnity Insurance Company ("Philadelphia") appeals from the trial court's judgment allowing plaintiff-appellee Great American Insurance Company of New York ("Great American") to assert a claim for equitable contribution and recover partial costs of defending their common insured, Satellite Affordable Housing Association ("SAHA"). Because Great American had primary liability for SAHA's defense costs, we reverse the judgment of the trial court and enter final judgment in favor of Philadelphia.

## I.      Facts and Procedure

{¶2} Great American was SAHA's primary commercial general-liability insurer from 2013 to 2018. The commercial general-liability ("CGL") policies provided coverage for accidental bodily injury, accidental property damage, and personal and advertising injury, and imposed on Great American a duty to defend SAHA against any lawsuit seeking damages covered under the policies.

{¶3} Philadelphia was SAHA's primary employment-practices-liability insurer from 2015 to 2016. The claims-made policy provided coverage for civil-rights violations and obligated Philadelphia, upon tender, to defend SAHA against any lawsuit seeking those damages.

{¶4} From 2015 to 2016, 16 residential tenants brought three California lawsuits against SAHA and six others. The tenants alleged that several substantial defects rendered the defendants' premises unfit for human occupancy. As relevant to this appeal, the plaintiffs sought damages for bodily injury and civil-rights violations. SAHA forwarded the complaints to Great American, seeking indemnity and defense. Great American agreed and retained counsel to represent SAHA. SAHA subsequently notified Philadelphia of the California lawsuits. Philadelphia issued a reservation of

2

rights, agreeing to participate in the defense to the extent it was required to do so under its policy. By July 10, 2018, all of the California plaintiffs had settled. Great American incurred a total of $367,487.90 in defense costs.

{¶5} On August 22, 2018, Great American filed the underlying complaint to obtain contribution from Philadelphia.[1] The parties submitted the case for a decision by the trial court. The court subsequently entered judgment in favor of Great American for Philadelphia's proportionate share of $153,855.32 in defense costs. Philadelphia appealed, raising two assignments of error for our review.

## II. *Law and Analysis*

{¶6} In its first assignment of error, Philadelphia argues that Great American cannot seek contribution for costs incurred defending SAHA. The key issue presented is whether Great American and Philadelphia provided the same level of coverage for defense costs to SAHA. Philadelphia asserts that Great American's policy provided primary defense costs coverage, which obligated it to defend the California lawsuits, while Philadelphia's policy provided secondary coverage, which limited its obligation to defense costs in excess of Great American's coverage. On the other hand, Great American contends that the policies were coprimary insurance policies and provided equal defense cost coverage with respect to the relevant lawsuits.

### 1. Choice of Law

{¶7} As a preliminary matter, Philadelphia argues that California law, rather than Ohio law, governs Great American's contribution claim.

{¶8} We review de novo a trial court's choice-of-law determination. *Griffith v. MacAllister Rental, LLC*, 1st Dist. Hamilton No. C-200311, 2021-Ohio-1800.

---

[1] Great American also sought contribution from First Mercury Insurance Company ("First Mercury"). However, First Mercury settled and is no longer a party to this action.

{¶9} Before engaging in a choice-of-law analysis, a court must determine whether there exists an actual conflict between Ohio law and the law of another state. *ISCO Industries, Inc. v. Great Am. Ins. Co.*, 2019-Ohio-4852, 148 N.E.3d 1279, ¶ 14 (1st Dist.). If the competing states would use the same rule of law or would otherwise reach the same result, it is unnecessary to make a choice-of-law determination because there is no conflict of law. *Id.* The party seeking to apply non-Ohio law bears the burden of showing a genuine conflict between Ohio law and the law of the foreign jurisdiction. *Id.* Where the party seeking application of non-Ohio law fails to demonstrate such a conflict, Ohio law governs. *Id.*

{¶10} Philadelphia contends that Ohio law and California law differ as to whether an "other insurance" clause can bar a coinsurer's right to contribution. However, Philadelphia has failed to show that the competing states would reach different results. In fact, Philadelphia contends that it is not obligated to pay defense costs under either Ohio or California law. Thus, Philadelphia has not shown that a conflict of laws exists, and we will apply Ohio law to Great American's contribution claim.

2. Contribution

{¶11} "Contribution is an insurer's right to recover amounts paid in excess of its fair share of an obligation shared by others." *Resco Holdings, LLC v. AIU Ins. Co.*, 2018-Ohio-2844, 112 N.E.3d 503, ¶ 11 (8th Dist.), citing *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 321 N.E.2d 787 (1975), paragraph two of the syllabus, *overruled on other grounds*, *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 653 N.E.2d 235 (1995). Contribution is an equitable doctrine that focuses on whether one party "has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, [and] the others

4

who have received a benefit ought in good conscience to refund to him a ratable proportion." *Pennsylvania Gen. Ins. Co. v. Park-Ohio Indus., Inc.,* 179 Ohio App.3d 385, 2008-Ohio-5991, 902 N.E.2d 53, ¶ 21, citing *Baltimore & Ohio R.R. Co. v. Walker*, 45 Ohio St. 577, 588, 16 N.E. 475 (1888).

{**¶12**} Thus, in order to decide this case, we must decide whether Great American and Philadelphia were equally bound to defend SAHA in the California lawsuits.

### 3. Duty to Defend

{**¶13**} Under Ohio law, "[a]n insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy." *City of Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. "An insurer's duty to defend is broader than and distinct from its duty to indemnify." *Id.* "Once a liability insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Id.*, citing *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 80, 491 N.E.2d 688 (1986). "These principles apply equally to situations where the allegations set forth in the complaint could arguably be covered by two insurers." *Maxum Indem. Co. v. Selective Ins. Co. of South Carolina*, 2012-Ohio-2115, 971 N.E.2d 372, ¶ 16 (9th Dist.), citing *Ins. Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App.3d 302, 314, 692 N.E.2d 1028 (8th Dist.1997).

{**¶14**} In this case, Great American and Philadelphia are coprimary insurers with regard to indemnity because the policies covered different claims. Great American was SAHA's primary commercial general-liability insurer and Philadelphia was SAHA's primary employment-practices-liability insurer.

{¶15} Great American's policy details a broad duty to defend. Great American's policy provides: "We will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' * * * to which this insurance applies. We will have the right and duty to defend the Insured against any 'suit' seeking those damages." Great American's policy continues: "This insurance is primary except when paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary." It is undisputed that "paragraph b." does not apply in this case.

{¶16} In pertinent part, Philadelphia's policy defines "Defense Costs" as:

Any reasonable and necessary legal fees and expenses incurred in the defense of a Claim, whether by the Insured with the Underwriter's consent or directly by the Underwriter, in the investigation, adjustment, defense and appeal of a Claim, except that defense costs shall not include:

a.　　Any amounts incurred in defense of any Claim for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such a duty[.]

{¶17} Under the Philadelphia policy, a "claim" is defined as "[a]ny civil proceeding * * * against an Insured for a Wrongful Act."

{¶18} Unlike the Great American policy, Philadelphia's policy does not require Philadelphia to control the defense. Rather, the insured has the option of tendering the defense to Philadelphia, or electing counsel of its choice and having Philadelphia "advance Defense Costs prior to the final disposition of a Claim."[2] There are specific

---

[2] Philadelphia contends that it had no duty to defend because SAHA never "tendered" the defense to Philadelphia and because SAHA never incurred any defense costs for Philadelphia to reimburse due to the fact that Great American retained defense counsel and paid for the defense costs. We

requirements that come with each option and Philadelphia's duty to defend is also limited by several provisions in the contract.[3]

**{¶19}** Great American argues that because it and Philadelphia are coprimary insurers, both had a duty to defend SAHA. However, Philadelphia contends that language in its policy limits its duty to defend in situations where another insurer, like Great American, has a duty to defend.

**{¶20}** Thus, in order to decide if Philadelphia had a coequal duty to defend SAHA, we must examine the language of Philadelphia's policy. Insurance policies are interpreted by the same rules of construction applicable to other contracts, and words in the policy must be given their plain and customary meaning. *Walker on behalf of Estate of Walker v. Albers Ins. Agency*, 2019-Ohio-1316, 134 N.E.3d 896, ¶ 20 (1st Dist.), citing *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶ 28.

### 4. "Other Insurance" Clause

**{¶21}** In addition to the "Defense Costs" definition, the Philadelphia policy also has an "Other Insurance" clause which provides:

> Insurance provided under this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is specifically written as excess. **This Policy shall be excess over any other policy under which another insurer has a duty to defend**

---

need not decide these questions because we find other language in Philadelphia's policy dispositive of whether it had a duty to defend SAHA.

[3] Philadelphia's policy also imposed a self-insured retention ("SIR") in the amount of $50,000. Philadelphia's policy provided: "The Underwriter shall only be liable for that portion of Loss arising from each Claim * * * which is in excess of the respective Retention[.] * * * Such Retention shall be borne by the Insured, uninsured and at their own risk[.]"An SIR is the amount that an insured must pay in its own defense before an insurer becomes obligated to pay. This meant SAHA was responsible for $50,000 in defense costs before Philadelphia was obligated to pay. It is undisputed that SAHA paid the $50,000 SIR.

**a Claim for which this Policy may be obligated to pay a Claim**

**as a result of Loss.**

(Emphasis added.)

{¶22} In situations in which two insurance policies cover the same risk, courts look to the provisions of their "other insurance" clauses in order to determine which policy applies. "An 'other insurance' clause can limit liability when other insurance is available to cover the loss." *State Auto. Mut. Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Ohio App.3d 139, 2008-Ohio-6835, 904 N.E.2d 607, ¶ 9 (1st Dist.). When one policy has an "other insurance" clause and the other does not, the clause is given full force and effect. *Amerisure Ins. Co. v. Mut. Fire, Marine & Inland Ins. Co.*, 8th Dist. Cuyahoga No. 58433, 1991 Ohio App. LEXIS 2121, *3 (May 9, 1991).

{¶23} Ohio law recognizes three principal types of other-insurance clauses, one of which is an "excess insurance" clause. "Excess" clauses are "those providing that in the event of other insurance, the insurer is liable only if the loss is in excess of the limits of the other policy[.]" *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 2d Dist. Montgomery No. 8662, 1984 Ohio App. LEXIS 10524, *4 (July 17, 1984). "An excess insurer's coverage obligation typically begins once a certain level of loss or liability is reached, which is referred to as the 'attachment point' of the excess policy." *William Powell Co. v. OneBeacon Ins. Co.*, 2020-Ohio-5325, 162 N.E.3d 927, ¶ 5 (1st Dist.), citing *Montrose Chem. Corp. v. Superior Court of Los Angeles Cty.*, 9 Cal.5th 215, 260 Cal.Rptr.3d 822, 460 P.3d 1201 (2020).

{¶24} In this case, Great American and Philadelphia insured different risks and both arguably had duties to defend all other claims within the complaint, even if they bore no relation to the insurance policy coverage. However, Philadelphia argues that the "Other Insurance" clause in its policy is an "excess clause" and makes its policy

"excess" with regard to its duty to defend. Because Philadelphia's policy has an "Other Insurance" clause and Great American's does not, Philadelphia contends that its "Other Insurance" clause must be given full force and effect.

{¶25} Great American argues that this "Other Insurance" clause does not apply to it because it and Philadelphia insure different losses: Great American's policy extends to bodily-injury claims but does not cover civil-rights claims, while Philadelphia's policy extends to civil-rights claims but excludes bodily-injury claims. Great American contends that the "Other Insurance" clause in Philadelphia's policy means that bodily-injury claims are not a "[c]laim for which this Policy may be obligated to pay a claim as a result of loss," and therefore the clause does not apply. We believe that Great American misinterprets the meaning of that clause.

{¶26} As stated above, the "Other Insurance" clause in Philadelphia's policy specifically refers to when Philadelphia's policy regarding its duty to defend is "excess." The clause states that even if Philadelphia ultimately has a duty to "pay a claim as a result of loss," the "[p]olicy shall be excess over any other policy under which another insurer has a duty to defend a claim." The meaning of this clause is that if another insurance company has a duty to defend even the claims that Philadelphia may be obligated to indemnify, then the Philadelphia policy is excess with regard to the duty to defend. Thus, Philadelphia's "Other Insurance" clause is referring to Great American.

{¶27} In addition, the "Defense Costs" definition in Philadelphia's policy states that defense costs shall not include: "Any amounts incurred in defense of any Claim for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty[.]" This language clearly refers to Great

9

American because Great American had a duty to defend all claims in the California lawsuits, even those covered by Philadelphia's policy.

{¶28} Both the "Defense Costs" definition and the "Other Insurance" provision in Philadelphia's contract lead us to conclude that because Great American is another insurer that had a duty to defend all claims against SAHA in the California lawsuits, Philadelphia's duty to defend was excess over Great American's duty to defend. Because the parties agree that all defense costs were incurred prior to the exhaustion of Great American's defense policy limits, we find that Philadelphia's duty to defend never attached. To hold otherwise would deprive Philadelphia of its right to a reasonable expectation to rely on the terms of its own contract with its insured. *See, e.g.*, *Meridian,* 2d Dist. Montgomery No. 8662, 1984 Ohio App. LEXIS 10524, at *12 ("In resolving conflicts among 'other insurance' clauses our duty is to 'honor the expectation of policyholders that they receive protection and still give at least partial effect to the insurer's intent to escape primary liability.' " *Id.,* quoting *Buckeye Union Ins. Co. v. State Auto Mut. Ins.* Co., 49 Ohio St.2d 213, 217, 361 N.E.2d 1052 (1977)); *Aetna Cas. & Sur. Co. v. Borden, Inc.*, 11th Dist. Lake No. 88-L-13-163, 1989 Ohio App. LEXIS 3550, *10-11 (Sep. 15, 1989) ("When an insurance company provides an insured with a policy, which it has drafted, containing terms with which it intends to bind the insured, the insurance company must expect to be held to the obligations which it, through its own drafting, has subjected itself.").

{¶29} According to the terms of the contract, Philadelphia was not equally bound with Great American to defend SAHA in the California lawsuits. Therefore, the equitable doctrine of contribution does not apply in this case.

{¶30} Based on the foregoing, we sustain Philadelphia's first assignment of error and hold that the trial court erred by allowing Great American to seek

contribution from Philadelphia. Philadelphia's second assignment of error, which challenges the trial court's allocation of defense costs among the parties, is rendered moot by our resolution of the first assignment of error and we therefore do not address it.

### III.   Conclusion

{¶31} Philadelphia's first assignment of error is sustained, and its second assignment of error is rendered moot by our disposition of the first assignment of error.  For the foregoing reasons, we reverse the judgment of the trial court and enter judgment in favor of Philadelphia.

Judgment reversed and final judgment entered.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.